UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH DESLONDE,<br><br>    Plaintiff,<br><br>v.<br><br>STATE OF NEW JERSEY, DONNA BALICK,<br>ROBERT GROVER, DENNIS NIEVES,<br>NICOLE ALBERT, MICHELLE LIBRADO,<br>LOUIS MANGIONE,<br><br>    Defendants. | Civil Action No. 09-03446 (JAP)<br><br>**OPINION** |

PISANO, District Judge.

Plaintiff Joseph Deslonde has brought this action against the State of New Jersey and the Honorable Dennis Nieves ("Moving Defendants") for constitutional violations relating to Plaintiff's detention. Plaintiff alleges violations of his Fifth Amendment right against Double Jeopardy, Sixth Amendment right to a Speedy and Public Trial and Right to Effective Assistance of Counsel, Fourteenth Amendment right to Equal Protection and Due Process, and conspiracy to deprive Plaintiff of these rights. This Court has original jurisdiction to hear this dispute pursuant to 28 U.S.C. § 1331.

Presently before the Court is the Moving Defendants' motion to dismiss. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Court grants Defendants' motion to dismiss.

I. **Background**

On July 14, 2007, Plaintiff Joseph Deslonde was arrested when police responded to a fight between Plaintiff's fiancé and members of her family outside the Marlboro Diner. Amended Compl. at ¶¶ F13, F14. Deslonde was not directly involved in the conflict, but when

the police ran Plaintiff's name after questioning him it was discovered that Deslonde had two traffic warrants out for his arrest. *Id.* ¶ F14. Since Plaintiff could not make bail, Deslonde was sent to Middlesex County Adult Correction Center ("MCACC"). *Id.* ¶ F17. After meeting with a social worker two-days later, Deslonde discovered for the first time that there was a third warrant out for his arrest relating to a 1995 probation violation from a 1989 indictment. *Id.* Plaintiff believed this third warrant for the probation violation was a mistake as he already had served his time in the matter. *Id.* ¶ F18. Plaintiff remained in MCACC for six months. *Id.* ¶ F20.

Plaintiff maintains that he was unlawfully detained in MCACC on the allegedly bogus 1995 violation of parole warrant. *Id.* Deslonde attributes the fraudulent warrant to a conspiracy between his fiancé Defendant Balick and her nephew Defendant Grover who was employed by MCACC. *Id.* ¶¶ F4, F21. Plaintiff ultimately holds the State of New Jersey responsible for the clerical mistake that showed the existence of the parole violation warrant. *Id.* ¶ F22.

Prior to his release, Plaintiff appeared before Judge Nieves to discuss the parole violation warrant. *Id.* ¶ F24. Up to this point in time, Deslonde had refused to accept any plea agreements knowing that the charges were not valid. *Id.* He claims that Judge Nieves, the State of New Jersey, Prosecutor Albert, and his Public Defender Labrada co-conspired to cover-up the fact that there had been a mistake with the warrant. *Id.* On January 1, 2008, Plaintiff was brought to a hearing before Judge Nieves. *Id.* ¶ F25. Plaintiff believed that the circumstances were suspicious in that the hearing was late in the afternoon, he received a private unmarked car escort, Judge Nieves was not sitting behind the bench, and the hearing was closed to the public and lacked a court reporter. *Id.* ¶¶ F26, F28. Deslonde maintains at this meeting that Judge Nieves and his lawyer tricked him into unknowingly signing a guilty plea by presenting

documents as release papers. *Id*. ¶ F28. Additionally, Deslonde alleges that Judge Nieves prolonged his detention time for two additional months in order to do a mental evaluation and that his complaints about the bogus 1995 warrant "fell upon deaf ears." *Id*. ¶ F23, F24.

Meanwhile, on January 17, 2008, Plaintiff was charged with making a terroristic threat and was assigned a new attorney. *Id*. ¶ G1. In regards to this charge, Plaintiff claims that his lawyer did not act in timely fashion which resulted in eleven months in jail. *Id*. ¶ G11.

On August 8, 2009, Plaintiff Deslonde filed an amended complaint against the Moving Defendants claiming violations of his constitutional rights relating to his detention. *Id*. ¶¶ E1-4. Specifically, Plaintiff alleges violations of his Fifth Amendment right against Double Jeopardy, Sixth Amendment right to a Speedy and Public Trial and Right to Effective Assistance of Counsel, Fourteenth Amendment right to Equal Protection and Due Process, and conspiracy to deprive Plaintiff of these rights. *Id*.

II. **Discussion**

    a. **Motion to Dismiss Standard of Review**

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Refashioning the appropriate standard, the United States Supreme Court found that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and

unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 127 S. Ct. at 1965 (internal citations and footnote omitted).

  b. **Legal Analysis**

  The issue presented is whether the acts of the State of New Jersey and Judge Nieves are cloaked by the principles of sovereign and judicial immunity so as to warrant a dismissal of the claims against them. Sovereign immunity is a well established principle that prevents states, state agencies and state officials acting in their official capacity from suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). The Eleventh Amendment specifically extends sovereign immunity to the states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. The Supreme Court has held under the Eleventh Amendment that sovereign immunity covers not only the state but the state's agencies and officers who act on behalf of the state. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). In order to respect the states as "joint sovereigns," sovereign immunity acts not as a defense to liability but a complete bar from suit. *FMC v. S.C. State Ports Auth.,* 535 U.S. 743, 765-66 (2002).

  While the states are protected from suit in federal court by private individuals, there are two limited exceptions to the doctrine of sovereign immunity where a suit may be maintained. First, Congress has the authority to allow suits in the exercise of its power to enforce the

Fourteenth Amendment. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Such an abrogation must express a clear showing of congressional purpose. *Quern v. Jordan*, 440 U.S. 332, 343 (1979). Second, a state may consent to be sued in order to overcome the Eleventh Amendment. *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779 (1991). A waiver of sovereign immunity must be "unequivocally expressed" in a "clear declaration." *Coll. Sav. Bank*, 527 U.S. at 676 (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)).

In addition to sovereign immunity, the doctrine of judicial immunity has been established by the Courts to provide the judiciary absolute immunity from suit when acting in their official judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Id*. (quoting *Bradley v. Fisher*, 80 U.S. 335 (1872)). Absolute immunity is necessary in order to permit judges to perform their job functions "without harassment or intimidation." *Butz v. Economou*, 438 U.S. 478, 512 (1978).

Similarly to sovereign immunity, judicial immunity acts as a complete bar from suit, not just from damages. *Mireles*, 502 U.S. at 11. As such, "judicial immunity cannot be overcome by allegations of bad faith or malice." *Id*. However, judicial immunity can be overcome when either the judge's actions are not taken in his judicial capacity or are performed in the complete absence of jurisdiction. *Id*. at 11-12. In order to determine if a judge is acting outside his official capacity, the factors considered are whether the act is a function normally performed by a judge and whether the parties dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435

U.S. 349, 362 (1978). In determining the scope of a judge's jurisdiction, jurisdiction must be construed broadly. *Id*. at 356. "A judge will not be deprived of immunity because the action he took is in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdictions.'" *Id*. at 356-57. Additionally, absolute judicial immunity is preserved to suits brought under 42 U.S.C. § 1983. *Mireles*, 502 U.S. at 10.

Here, sovereign immunity and judicial immunity bar suit against the State of New Jersey and Judge Nieves. First, the New Jersey court system constitutes part of the State of New Jersey and therefore receives the protection of sovereign immunity. *See Johnson v. State of New Jersey*, 869 F. Supp. 289, 296-97 (D.N.J. 1994) ("The Court finds that the New Jersey Superior Court is an "arm" of the state entitled to share in the state's sovereign immunity. The Court finds that the judicial branch is an integral part of the State of New Jersey."). Additionally, the state agency which Plaintiff blames for the clerical error would also fall under the state's immunity protection. Further, judges of the State of New Jersey are protected by sovereign immunity. *Id*. at 297-98. In so far as Plaintiffs' complaint arise from the handling of his charges and the judicial decisions made during his detention, the State of New Jersey and its respective officials are cloaked from suit by the doctrine of sovereign immunity. Additionally, Plaintiff is correct in noting in his opposition papers that there are two exceptions to the doctrine of sovereign immunity; however, here, there is no evidence that the State consented to be sued by Plaintiff or that Congress chose to permit such suit. Therefore, the suit against the State of New Jersey and Judge Nieves must be dismissed.

Moreover, the suit against Judge Nieves must be dismissed due to judicial immunity. Plaintiff's allegations as to Judge Nieves relate to his actions performed in his official capacity as

a judicial officer. Specifically, the Plaintiff complains that Judge Nieves both co-conspired to trick him into signing a guilty plea by calling a "suspicious" meeting and intentionally prolonged his detention by requiring evaluations. All such claims derive from Plaintiff's dissatisfaction with Judge Nieves judicial decisions and case management. While the allegations might show malice or error on the part of Judge Nieves, judicial immunity still exists since Judge Nieves was clearly performing adjudicative functions. Therefore, the claims against Judge Nieves must be dismissed. In light of the dismissal of all claims against the State of New Jersey and Judge Nieves, there is no need for the Court to consider Defendants' remaining grounds for dismissal.

### III. Conclusion

For the reasons set forth above, the Moving Defendants' motion to dismiss is granted. An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Date: November 17, 2009